Carol A. Sobel, SBN 84484
Colleen M. Mullen, SBN 299059
Justine M. Schneeweis, SBN 305672
LAW OFFICE OF CAROL A. SOBEL
3110 Main St., Ste. 210
Santa Monica, CA 90405
T: (310) 393-3055
E. carolsobel@aol.com
E. mullen.colleen1@gmail.com
E. Justine.schneeweis@gmail.com

Paul L. Hoffman, SBN 71244
Catherine Sweetser, SBN 271142
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN LLP
723 Ocean Front Walk
Venice, California 90291
(t)  310 396-0731; (f)  310 399-7040
(e)  hoffpaul@aol.com
(e)  catherine.sdshh@gmail.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SHAWN NEE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CITY OF LOS ANGELES; CHIEF CHARLIE BECK, individually and in his official capacity; OFFICER JAYE; OFFICER PEARSON; SERGEANT LJUBETIC and DOES 1-10,<br><br>　　　　　　　　　Defendants. | Case No.:<br><br>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES<br><br>42 U.S.C. § 1983: FIRST, FOURTH and FOURTEENTH AMENDMENT<br><br>CALIFORNIA CONSTITUTION ARTICLE I, § 2; CA CIVIL CODE §52.1<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. This is an action for injunctive and declaratory relief and damages pursuant to 42 U.S.C. § 1983, based upon ongoing violations by the Defendants of the rights secured to Plaintiff by the First and Fourteenth Amendments of the United States Constitution. Jurisdiction exists based on 28 U.S.C. §§ 1331 and 1343, in that this case is brought pursuant to 42 U.S.C. § 1983 and raises questions of federal constitutional law under the First and Fourteenth Amendments. The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, in that it forms part of the same case or controversy as the federal claim.

2. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims herein occurred in this District.

3. This Court has the authority to grant damages, declaratory and injunctive relief, and any other appropriate relief pursuant to 28 U.S.C. §§ 1331 and 1343.

## INTRODUCTION

4. Plaintiff, a photojournalist and documentary film maker, brings this action against the City of Los Angeles (City) and individual officers in the Los Angeles Police Department (LAPD) because the LAPD repeatedly prevents Plaintiff from being able to film and photograph the police in public while he stands on the sidewalk, a quintessential public forum. Plaintiff seeks to enjoin the City and the LAPD from violating the First Amendment rights of Plaintiff.

5. The LAPD has a policy, custom, and practice of violating the constitutional rights by preventing members of the public from engaging in the protected First Amendment activity of filming or photographing public police activity from public sidewalks. The right to film public officials engaged in the

business of the public in traditional for a has long been established as a First Amendment protected activity. Despite this, Defendant City has failed to develop adequate and lawful policies to inform and train its personnel on this issue.

6.  LAPD officers operated under color of law and with complete disregard for the constitutional rights of Plaintiff. In one instance in which Plaintiff attempted to photograph the police detaining an individual on the street, an LAPD officer moved his body in front of Plaintiff's camera, blocking Plaintiff's view, to prevent him from taking pictures of the police activity. In another instance, an LAPD officer forcefully grabbed Plaintiff's cell phone out of his hands so that he could not film the police. In prior incidents, the police have detained, handcuffed, and transported Plaintiff to the police station when he was engaged in protected filming of the officers in a public place.

7.  Defendants, their agents and employees, suppressed Plaintiff's protected First Amendment activity without legal justification. Plaintiff never interfered with any police investigation at any point and was always in a traditional forum open to members of the public to traverse freely.

10.  Because of the Defendants' complete disregard for Plaintiff's constitutional rights despite his repeated complaints, Plaintiff has no choice but to ask this Court to intervene to put an end to the LAPD's illegal practice.

**PARTIES**

11.  Shawn Nee is and at all relevant times was a resident of the City and County of Los Angeles, California.

12.  Defendant City of Los Angeles is, and at all times relevant herein was, a municipal entity duly organized under the laws of the State of California, with the capacity to sue and be sued. The City is a Charter City and subject to the Charter and the City Administrative Code. The Los Angeles Police Department is

a subdivision of the City of Los Angeles.  The City is sued on the basis of its policies, customs and/or practices, which gave rise to Plaintiff's federal civil rights claims, as well as on the basis of *respondeat superior* for the state law claims.

13. Chief Charlie Beck is the head of the Los Angeles Police Department. He is a policy maker for the Los Angeles Police Department and the City of Los Angeles on the issues raised by Plaintiff's claims.  Beck ratified and/or condoned the policies, practices and customs that caused the violations of Plaintiff's First Amendment rights.

15. Sergeant Anthony Ljubetic is a supervisor in the Los Angeles Police Department.  When Mr. Nee's phone was forcefully grabbed out of his hands by Defendants' agents and employees as he was filming police activity, Mr. Ljubetic was the supervisor on duty.  On information and belief, Lt. Ljubetic was informed of the situation and approved the officer's unconstitutional actions.

16. Officer Jaye and Officer Pearson violated Mr. Nee's First Amendment right to record police activity in public.  Officer Jaye stood in front of Mr. Nee's camera wherever he pointed it, using his body to block Mr. Nee from being able to take photos of the police activity on the street.  Officer Pearson shined a light directly at Mr. Nee's iPhone to prevent it from being able to film, and forcefully grabbed Mr. Nee's iPhone out of his hands, thereby committing an assault and battery against Mr. Nee and preventing him from exercising his First Amendment right to record police in public.

17. DOES 1-10 are other police officers, including supervisors, who were present at the location where Plaintiff attempted to photograph or film police activity who caused, participated in, and/or failed to intervene to prevent other officers from violating Mr. Nee's First Amendment rights. Plaintiff is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 10,

inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

18. Each of the Defendants, including defendants DOES 1 through 10, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiff by personally participating in the unlawful conduct, or acting jointly, or conspiring with others who did so; by authorizing, acquiescing in, or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to Plaintiff's rights to initiate and maintain adequate training and supervision; by failing to enact policies to address the First Amendment rights of citizen "journalists" despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

19. In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

20. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or color of law.

21. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other Defendants.

## STATEMENT OF FACTS

22. Shawn Nee is a "citizen" photojournalist, film editor, and documentary filmmaker. His work includes documenting encounters between the police and members of the public. In addition to documenting these encounters with a camera or a phone, Mr. Nee also wears a body camera in the event that there is any interaction between himself and the police that he wants to document.

**JULY 5, 2015 EVENTS:**

23. On July 5, 2015, Mr. Nee observed several LAPD officers conducting an investigation and detaining an individual on a public street in Los Angeles, California. Standing on the adjacent public sidewalk, Mr. Nee began taking photographs of this police activity with his camera. He also wore a body camera to capture events. There were parallel-parked cars along most of the street that separated Mr. Nee from the police activity.

24. When police became aware that Mr. Nee was photographing them, LAPD Officer Stuart Jaye asked from a distance if he could help Mr. Nee with something, to which Mr. Nee replied, no and that he was okay. Seconds later, Officer Jaye came up to Mr. Nee and stood just inches away from him. Mr. Nee informed Officer Jaye that he was being recorded.

25. Mr. Nee then moved his camera to a different angle. Officer Jaye moved directly in front of where Mr. Nee pointed his camera so as to block Mr. Nee from being able to take photos of the police activity. Plaintiff believed this conduct by Officer Jaye to be deliberate. Mr. Nee asked for Officer Jaye's name and badge number and requested that he call a supervisor.

26. While waiting for the supervisor to arrive, Officer Jaye continued to move his body directly in front of Mr. Nee's camera to prevent him from recording the police. Officer Jaye continued doing so when Mr. Nee began filming with his cell phone, rather than his camera. Still, Officer Jaye continued to follow Mr. Nee as he walked along the sidewalk and attempted to photograph the police on the street. Officer Jaye stood at various distances, from several feet to several inches away from Mr. Nee. For approximately 12 minutes, Officer Jaye stood in front of every single direction Mr. Nee pointed his camera or cell phone, thereby preventing Mr. Nee from documenting the police activity occurring on the street. The sidewalk from which Mr. Nee tried to photograph the police activity was open

to the public. It was not blocked off by caution tape and was available for the public to freely traverse. At one point, a woman rode her bike on the sidewalk and passed right next to where Officer Jaye and Mr. Nee were standing.

27. When the supervising officer, Doe 1, arrived, Mr. Nee reported that Officer Jaye was blocking his camera with his body and preventing him from taking pictures. The supervising officer replied that "[Officer Jaye was] not . . . putting his hand in front of [Mr. Nee] or anything." She did not order Officer Jaye to stop blocking Mr. Nee's camera.

**NOVEMBER 10, 2015 EVENTS:**

28. On November 10, 2015, Mr. Nee again observed several LAPD cars and officers conducting an investigation on a public street in the Hollywood area of Los Angeles, California. Mr. Nee stood on the public sidewalk some distance away from the police and observed the activity. He wore a body camera and was holding his iPhone, which was not yet recording. Mr. Nee was not interfering with the police investigation in any way.

29. The sidewalk Mr. Nee was standing on was open for members of the public to traverse freely. Mr. Nee was separated by the police activity by a parallel-parked car on the street.

30. When Officer Pearson became aware that Mr. Nee was recording the police activity, he approached Plaintiff and shined a flashlight directly into Mr. Nee's iPhone so that the camera could not record. Officer Pearson told Plaintiff that he was not allowed to stand behind the officers and directed him to stand "over there," further down the sidewalk. Almost immediately after giving this directive, Officer Pearson forcefully grabbed Mr. Nee's phone out of his hands and turned it off.

31. Mr. Nee spoke to the supervisor on duty, Sergeant Anthony Ljubetic, and complained about Officer Pearson's actions.

## MONELL ALLEGATIONS

32. The LAPD has a custom and practice of deterring "citizen journalists" from recording poice activity in public places and used threats and intimidation tactics to prohibit this well-established First Amendment activity. There is an endemic custom and practice inside the police department of harassing, intimidating, and using force against "citizen journalists" who attempt to videotape or otherwise record police activity.

33. The City was on notice prior to July 5, 2015, that members of the police department were violating the First Amendment rights of "citizen journalists" who filmed law enforcement activity in public fora, but did nothing to stop this illegal conduct by its officers.

34. After an assault on journalists by LAPD officers at the 2000 Democratic National Convention in Los Angeles, the City came to a settlement agreement in the lawsuit, Crespo v. City of Los Angeles. In that settlement, the City established specific areas at protests and other significant incidents for credentialed journalists employed by media organizations. Despite this agreement, LAPD officers once again assaulted journalists during an unlawful action to disperse a lawful protest on May 1, 2007 in Mac Arthur Park. After this incident, LAPD again agreed to implement the Crespo settlement agreement and provide for specific locations from which the media could observe police activity in public places.

35. The City's existing policy and/or training fails to recognize that the First Amendment rights of credentialed journalists are no greater than the First Amendment rights of "citizen journalists." These First Amendment rights were clearly established before the LAPD's intimidation, assault, and battery of Mr. Nee.

36.     Based upon the principles set forth in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), the City is liable for all injuries sustained by Plaintiff as set forth herein.  The City bears liability because its policies, practices, and/or customs caused Plaintiff's injuries.  The City and its officials maintained or permitted one or more of the following official policies, customs, or practices:

    A.     Failure to implement lawful policies on, and/or to provide adequate training and supervision to police officers with respect to, the First Amendment rights of the public to monitor and record police activity;

    B.     Failure to adequately investigate and/or discipline officers alleged to have violated the First Amendment rights of individuals documenting police activity in public fora;

    C.     Condonation and encouragement of officers in the belief that they can violate the rights of persons such as Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits;

    D.     Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this complaint.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

37.      Plaintiff timely filed a claim with the Defendant City of Los Angeles pursuant to Cal. Gov't Code § 910 et seq.  Defendant City of Los Angeles denied the claim.

## FIRST CAUSE OF ACTION

**Violation of First Amendment (42 U.S.C. § 1983); Ca. Const. Art. I, §2 and 3 Against All Defendants**

38.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

39. Defendants' actions violated Plaintiff's rights to freedom of expression under the First Amendment to the United States Constitution by prohibiting Plaintiff from exercising his constitutional right to free speech and expression in a traditional public forum, as well as freedom of the press.

40. Defendants violated these rights when they physically blocked Plaintiff's ability to photograph public police activity while Plaintiff stood on an open public sidewalk. Defendants again violated these rights when they forcefully grabbed Plaintiff's phone out of his hands so that he would not be able to use it to record public police activity while standing on an open public sidewalk.

41. Defendants knew or should have known that preventing someone from recording public police activity on the street from an open public sidewalk without interfering with the police investigation was a clearly established violation of the First Amendment at the time of the incident.

42. As a direct and proximate result of Defendants' actions, Plaintiff experienced a constitutional deprivation.

## SECOND CAUSE OF ACTION

**Retaliation in Violation of the First Amendment (42 U.S.C. § 1983); Ca. Const. Art. I, § 2**
**(Against All Defendants)**

43. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

44. Defendants knew or should have known that both prohibiting the recording of police activity from a safe and non-obstructive distance, and retaliating against a person for exercising his First Amendment rights, were clearly established as violations of the First Amendment at the time of the incident.

45. Defendants' actions also violated Plaintiff's First Amendment rights by retaliating against him for asserting that he had a right to photograph or film the

police on a public street from an open public sidewalk. Defendants retaliated against Plaintiff by following him every direction he walked on the street and blocking his camera from being able to film public police activity, as well as by forcefully grabbing Plaintiff's phone out of his hands and turning it off. Plaintiff had a First Amendment right to tell the officers about his constitutional right to document the police, as well as to engage in his First Amendment right to photograph and film the police in the first place.

46. Defendants knew or should have known that retaliating against someone for asserting his First Amendment rights was a clearly established violation of the First Amendment at the time of the incident.

47. As a direct and proximate result of Defendants' actions, Plaintiff experienced a constitutional deprivation.

### THIRD CAUSE OF ACTION

**Unlawful Seizure in Violation of the Fourth Amendment (42 U.S.C. §1983); Ca. Const. Art. I, § 7**
**(Against All Defendants Except Doe I and Off. Jaye)**

48. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

49. The seizure of Plaintiff's iPhone by Officer Pearson and condoned and ratified by Sgt. Ljubetic was unlawful and violated Plaintiff's Fourth Amendment rights to be free from unlawful seizure of his property.

50. Defendants knew or should have known that retaliating against someone for asserting his First Amendment rights was a clearly established violation of the First Amendment at the time of the incident.

51. As a direct and proximate result of Defendants' actions, Plaintiff experienced a constitutional deprivation.

# FOURTH CAUSE OF ACTION

Violation of Cal. Civ. Code 52.1
(Against All Defendants)

52. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

53. Defendants' actions violated Plaintiff's right to freedom of expression and his right to information about the activity of public employees, as well as his right to be free from unlawful seizure of his property, all rights guaranteed under the United States and California constitutions.

54. Defendants used force, intimidation, and coercion and/or threats of force and intimidation to violate Plaintiff's rights. Officer Jaye followed Mr. Nee everywhere he walked on the sidewalk and stood directly in front of him while Nee tried to take pictures of the police. Officer Jaye did these things to prevent Mr. Nee from exercising his constitutional right and in retaliation for his assertion of his constitutional rights. This violated Plaintiff's right to be free of threats, force, and intimidation in the exercise of rights granted to Plaintiff by the U.S. and California constitutions.

55. Officer Pearson also used force, intimidation, and coercion and/or threats of force and intimidation to violate Plaintiff Nee's right to freedom of expression. Officer Pearson shined his flashlight to blind Mr. Nee's phone and forcefully grabbed Mr. Nee's phone out of his hands because Mr. Nee was exercising his constitutional rights and in retaliation for his assertion of his constitutional rights. This violated Plaintiff's right to be free of threats, force, and intimidation in the exercise of rights granted to Plaintiff by the U.S. and California constitutions.

56. As a direct and proximate result of Defendants' actions, Plaintiff experienced interference with his rights protected under the federal and state constitutions.

## PRAYER FOR RELIEF

57. Plaintiff therefore respectfully requests that the Court enter a judgment providing:

 a. a declaration that Defendants' policies, practice or custom of obstructing members of the public being able to film or photograph public police activity is unlawful under the First Amendment;

 b. a declaration that the seizure of Plaintiff's camera to prevent him from filming or photographing public police activity is unlawful under the First and Fourth Amendments;

 c. an injunction directing the Defendant City to enact a lawful policy regarding the First Amendment right of members of the public to videotape law enforcement activity in public places and directing training on the policy;

 c. compensatory and statutory damages in an amount to be determined at trial;

 d. reasonable attorneys' fees and costs; and

 e. any other relief the Court deems just and proper.

DATED: July 7, 2016   Respectfully submitted,

          LAW OFFICE OF CAROL A. SOBEL


          _____/s/ Carol A. Sobel_____
          By: CAROL A. SOBEL

Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial in this matter.

DATED: July 7, 2016            Respectfully submitted,

                               LAW OFFICE OF CAROL A. SOBEL


                                     /s   Carol A. Sobel
                               By: CAROL A. SOBEL